IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| CHELLINO CRANE, INC. et al.[1] | : | Case No. 17-14200 |
| Debtors. | : | (Jointly Administered) |

**OBJECTION OF SUMITOMO MITSUI FINANCE AND LEASING CO., INC. TO DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO: (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO FIRST MIDWEST BANK**

Sumitomo Mitsui Finance and Leasing Co., Inc. (the "Sumitomo"), by its undersigned attorneys, hereby submits this Objection (the "Objection") to the Emergency Motion for Interim and Final Orders Authorizing the Debtors to : (A) Use Cash Collateral; (B) Incur Postpetition Debt; and Grant Adequate Protection And Provide Security And Other Relief To First Midwest Bank [Docket No 11] (the "Financing Motion"). In support of the Objection, Sumitomo respectfully represents and states as follows:

**Preliminary Statement**

Sumitomo files this Objection because the Debtors seek authority to grant to First Midwest Bank ("DIP Lender"), Replacements Liens and Postpetition Liens in substantially all of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Chellino Crane, Inc. (6804); Sam J. Chellino Crane Rental, Inc. (0830); G & B Equipment, LLC (0688); Chellino/Industrial Park Family Limited Partnership (1246); and Chellino Industrial Management, Inc. (0691).

1

its collateral, which liens would be subject only to the Carve-Out and Permitted Priority Liens.[2] In addition, the Debtors seek a finding from the Court that the DIP Lender's Prepetition Liens are Priority Liens, subject only to Permitted Priority Liens. The Debtors reference 11 U.S.C. § 364(d) in the Motion as the basis for relief, which allows a Debtor to obtain credit secured by a senior or equal lien on property of the estate subject to an existing lien. However, the provisions of the Motion and the proposed Interim Order suggest the Debtors are seeking to grant to the DIP Lender liens which are subordinate to existing liens because the Debtor seeks to grant the liens "subject to" the Permitted Priority Liens, and because the Debtors do not discuss adequate protection payments that would be required under 11 U.S.C. § 364(d). In summary, it unclear whether the Debtor is seeking to grant to the DIP Lender liens, which are subordinate to, equal to or senior to existing prepetition liens.

Additionally, although it appears the Debtors acknowledge in their spreadsheet on page 5 of the Motion that Sumitomo holds a Permitted Priority Lien, because it holds a "first lien on multiple cranes and trailers," the Motion is not clear on that point and Sumitomo seeks clarification on this issue.

To the extent the Debtors seek to grant to DIP Lender a lien that is senior to or equal to the prepetition liens held by Sumitomo on certain cranes and trailers, and to the extent the Debtors do not acknowledge that Sumitomo holds a Permitted Priority Lien, Sumitomo does not consent to issuance of such liens and objects to the requested relief on the basis that the Debtors have not demonstrated that they were unable to obtain credit that did not require the grant of such

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

liens, and the Debtors have not indicated the type or amount of adequate protection they intend to provide to Sumitomo as required under 11 U.S.C. § 364(d).

**Objection**

A.   **Terms of the Proposed DIP Facility.**

1. With regard to the DIP Lender's liens, the Motion and proposed Interim Order provide as follows:

   a. <u>Prepetition Liens</u>.

2. The Motion provides that the DIP Lender's Prepetition Liens shall constitute Priority Liens, subject only to the Postpetition Liens and the Permitted Priority Liens. The term *Priority Liens* is defined in the Interim Order as: Liens that are first priority, properly perfected, valid and enforceable security interests, and that are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law. The term *Permitted Priority Liens* is defined in the Interim Order as: Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date; provided, however, that Permitted Priority Liens shall not include proceeds of Prepetition Collateral which consist of rental payments on leased equipment.

  b. Replacement Liens

3. The Motion provides that to the extent of any diminution in value of DIP Lender's interest in the Prepetition Collateral from and after the Petition Date and subject to the Carve-Out, DIP Lender will be granted the Replacement Liens as security for payment of the Prepetition Debt. *Replacement Liens* is defined in the Interim Order as: Priority Liens in the Postpetition Collateral granted to First Midwest pursuant to this Interim Order, subject only to the Postpetition Liens and the Permitted Priority Liens.

  c. Postpetition Liens.

4. The Motion provides that DIP Lender will be granted the Postpetition Liens to secure the Postpetition Debt, and further provides: Subject to the Carve-Out, the Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) pursuant to §§ 364(c)(2), (c)(3) and 364(d) of the Bankruptcy Code, are Priority Liens senior in priority to all liens on the Postpetition Collateral other than Permitted Priority Liens, without any further action by the Debtors or First Midwest and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to avoidance or subordination including, without limitation, under § 510(c) of the Bankruptcy Code; and (4) shall not be subject to any security interest or lien that is avoided and preserved pursuant to § 5 51 of the Bankruptcy Code; and (5) shall remain in full force and effect notwithstanding any subsequent conversion of the Cases to chapter 7 or dismissal of the Cases.

**B. The Motion does not make the Debtors' intentions clear with regard to the anticipated priority of the Prepetition Liens, Replacement Liens and Postpetition Liens.**

5. The common theme with regard to the Prepetition Liens, Replacement Liens and

Postpetition Liens is that they are all "subject to" Permitted Priority Liens, which includes the liens of third parties upon Prepetition Collateral, such as the first position liens held by Sumitomo on certain cranes and trailers.

6. However, the Motion does not make clear whether "subject to" means equal to or subordinate to the Permitted Priority Liens. The fact that the Debtors do not discuss any anticipated adequate protection payments, which would be required under 11 U.S.C. § 364(d) suggests that the Debtors intent is that the Prepetition Liens, Replacement Liens and Postpetition Liens shall be junior in priority to the Permitted Priority Liens, however the matter is unclear.

7. Additionally, the Debtors do not make clear, which stakeholders are deemed to hold Permitted Priority Liens. The Debtors spreadsheet built into the body of the Motion on Page 5 shows Sumitomo to be a first position lien holder with regard to certain cranes and trailers. Based upon the provisions of the Motion and the Interim Order, it should follow that Sumitomo's liens on those certain cranes and trailers is Permitted Priority Liens (subject to any party in interest's rights to challenge the validity of Sumitomo's liens), but there is no discussion of whether both the Debtors and DIP Lender have agreed to that classification at this stage of the case.

8. As such Sumitomo is unable to determine whether its liens would be senior in priority to the Prepetition Liens, Replacement Liens and Postpetition Liens, or whether the Debtors are proposing to issue liens, equal or senior in priority to Sumitomo's liens.

9. To the extent the Debtors are proposing to issue liens senior or equal in priority to Sumitomo's liens, Sumitomo objects to such relief on the basis that the Debtors' have not made an evidentiary showing that they were unable to obtain credit that does not require the granting of such liens, and on the basis that the Debtors have not indicated the type or amount of adequate

protection they will provide to Sumitomo as required by 11 U.S.C. § 364(d).

10. Given that the Motion was filed on an emergency basis, which provided Sumitomo with a limited amount of time to prepare an objection prior to the interim hearing, Sumitomo hereby reserves the right to file a further objection on the same or different grounds prior to the final hearing.

**WHEREFORE**, Sumitomo respectfully requests that the Court enter an order denying the interim relief sought pending clarification from the Debtors; pending a required evidentiary showing that credit was not otherwise available without granting the requested liens, and otherwise consistent with the foregoing Objection.

Dated: May 9, 2017

                                            SUMITOMO MITSUI FINANCE
                                            AND LEASING CO., INC.

                                    By:    /s/ Christopher M. Cahill
                                                  One of Its Attorneys

Christopher M. Cahill (IL ARDC #6257370)
Andrew Baumann (IL ARDC# 6292356)
Lowis & Gellen LLP
200 West Adams St.
Suite 1900
Chicago, IL 60606
(312) 456-2500
ccahill@lowis-gellen.com
abaumann@lowis-gellen.com

Tracy L. Klestadt
Brendan M. Scott
KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, NY 10018-1603
(212) 972-3000