UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.: 17-14200 |
| CHELLINO CRANE, INC., et al. | ) | (Jointly Administered) |
| | ) | Chapter: 11 |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

**ORDER AUTHORIZING THE DEBTORS TO: (A) USE CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION DEBT ON AN INTERIM BASIS PENDING A FINAL HEARING; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO FIRST MIDWEST BANK**

This matter came before this Court on the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") requesting that this Court enter an interim order (this "Interim Order"), and later after notice and a hearing, a final order (the "Final Order"), authorizing the Debtors to: (a) use Cash Collateral; (b) incur postpetition debt up to a maximum amount of $300,000 through the entry of the Final Order (the "Postpetition Debt"); and (c) grant adequate protection and provide security and other relief to First Midwest Bank ("First Midwest"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof. For the reasons stated on the record at the hearing held on May 9, 2017,

IT IS HEREBY ORDERED THAT:

1. Authorization to Use Cash Collateral. The Debtors are authorized to use Cash Collateral in accordance and as limited by the Budget, subject to the Permitted Variance, and otherwise in accordance with and pursuant to the terms and provisions of this Interim Order, through the entry of the Final Order.

2. Authorization to Incur Postpetition Debt.

(a) Permitted Uses of Postpetition Debt. The Debtors are authorized and have agreed to incur the Postpetition Debt, in accordance with the terms and provisions of this Interim Order, which Postpetition Debt shall be used for all purposes permitted under the Budget.

(b) Superpriority Administrative Expense Status; Postpetition Liens.

(i) The Postpetition Debt is hereby granted superpriority administrative expense status under § 364(c)(1) of the Code, with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code; and the Postpetition Debt is entitled to the protections of § 364(e) of the Code.

(ii) In addition to the Prepetition Liens, First Midwest is hereby granted postpetition Priority Liens pursuant to §§ 364(c)(2), (c)(3) and 364(d) of the Code to the extent of the Postpetition Debt (the "Postpetition Liens") in the Aggregate Collateral subject and subordinate only to: liens and security interests in favor of third parties upon the Prepetition Collateral and proceeds thereof, including

equipment lenders, which third-party liens and security interests, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date; provided, however, that Permitted Priority Liens shall not include proceeds of Prepetition Collateral which consist of accounts from the rental of equipment leased to customers of Debtors (collectively, the "Permitted Priority Liens"), which Postpetition Liens (x) shall not be subject to avoidance or subordination including, without limitation, under § 510(c) of the Code; (y) shall not be subject to any security interest or lien that is avoided and preserved pursuant to § 551 of the Code; and (z) shall remain in full force and effect notwithstanding any subsequent conversion of the Cases to chapter 7 or dismissal of the Cases.

(c) Prohibition Against Additional Debt. The Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of § 364 of the Code: (1) First Midwest has consented to such order; or (2) such credit or debt is used to pay the Postpetition Debt and the Prepetition Debt in full, in cash, immediately upon the entry of such order.

3. Adequate Protection of Interests of First Midwest in the Prepetition Collateral and the Prepetition Liens. As adequate protection for First Midwest's interest in the Prepetition Collateral under §§ 361, 362, 363 or 364 of the Code from and after the Petition Date, and to induce First Midwest to provide the Postpetition Debt:

(a) Priority of Prepetition Liens/Allowance of First Midwest's Claim. Subject to the rights set forth in Paragraph 5 of this Interim Order: (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Postpetition Liens and the Permitted Priority Liens; and (2) the Prepetition Debt shall constitute the legal, valid and binding obligation of each of the Debtors that are obligated on such Prepetition Debt by the terms of the documents governing such debt, by guarantees or otherwise, and their respective estates, enforceable in accordance with the terms of the applicable Prepetition Documents.

(b) Replacement Liens. To the extent of any diminution in value of First Midwest's interest in the Prepetition Collateral from and after the Petition Date, First Midwest is hereby granted the Replacement Liens as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be deemed properly perfected, valid and enforceable liens without any further action by the Debtors or First Midwest and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion to chapter 7 or dismissal of the Cases. Notwithstanding the foregoing, the Debtors authorized to and shall execute and deliver to First Midwest such financing statements, mortgages, instruments and other documents as First Midwest may reasonably request from time to time in respect of the Replacement Liens.

(c) Allowed Code § 507(b) Claim. As additional adequate protection of the interests of First Midwest in the Prepetition Collateral, to the extent of any diminution in value of First Midwest's interest in the Prepetition Collateral from and after the Petition Date, First Midwest shall have an allowed claim under § 507(b) of the Code, with priority over: (1) all costs and expenses of administration of the Cases (other than First Midwest's claims under § 364 of the Code) that are incurred under any provision of the Code; and (2) the claims of any other party-in-interest under § 507

(b) of the Code.

4. Provision Intentionally Omitted.

5. Binding Effect of Stipulations; Challenge Period. This Interim Order, shall be binding on all parties-in-interest, including, without limitation, any Committee. Further, unless, and solely to the extent that, (a) a party in interest has timely filed an adversary proceeding challenging the amount, validity, or enforceability of the Prepetition Debt, or the perfection or priority of First Midwest's liens on and security interests in the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against First Midwest relating to the Prepetition Debt, by no later than (x) with respect to the Creditors' Committee, the date that is 60 days after the date of its formation, and, with respect to any other party, the date that is 75 days from the entry of this Interim Order, and (b) the Court rules in favor of such party in interest or the Committee in any such timely and properly filed adversary proceeding, then, without further order of the Court, (i) the claims, liens and security interests of First Midwest shall be deemed to be allowed for all purposes in the Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (ii) the Debtors and their estates shall be deemed to have waived, released and discharged First Midwest and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Interim Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents; provided, however, that the waiver contained in this paragraph 5 shall not apply in the event of fraud, gross negligence and/or willful misconduct.

6. Force and Effect of Prepetition Documents. Except as modified herein and subject to the other provisions of this Interim Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt. To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Interim Order, this Interim Order shall govern and control.

7. Modification of Stay. The automatic stay of § 362 of the Code is hereby modified solely with respect to First Midwest to the extent necessary to effectuate the provisions of this Order.

8. No Waiver. First Midwest shall not be deemed to have suspended or waived any of their rights or remedies under this Interim Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of First Midwest, as applicable, and directed to the Debtors. No failure of First Midwest to require strict performance by the Debtors, or by any chapter 1 trustee appointed or elected in the Cases of any provision of this Interim Order shall waive, affect or diminish any right of First Midwest thereafter to demand strict compliance and performance therewith, and no delay on the part of First Midwest in the exercise of any right or remedy under this Interim Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Interim Order shall not constitute a waiver by First Midwest of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation its right to later assert: (1) that its interests in the Aggregate Collateral lack adequate protection within the meaning of §§ 362(d) or 363(e) of the Code or any other provision thereof; or (2) a claim under § 507(b) of the Code.

9. Amendments. The Debtors and First Midwest may enter into amendments or modifications of the

Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest, and (b) notice of any such amendment or modification is filed with this Court.

10. Reporting. In addition to all reporting requirements under the Prepetition Documents, the Debtors shall timely provide First Midwest with reports on no less than a weekly basis detailing the Debtors' compliance with the Budget and any changes in its projections including, but not limited to, cash inflows and outflows, weekly borrowing base certificates, accounts receivable aging, accounts payable aging, weekly actual cash flow versus projections, and shall otherwise reasonably cooperate with First Midwest regarding the Budget and the administration of its assets.

11. Binding Effect. Except as provided in Paragraph 5 herein, this Interim Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, but not any chapter 7 trustee who may be appointed in these cases in the future. If, in accordance with § 364(e) of the Code, this Interim Order does not become a final nonappealable order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 5 of this Interim Order, the stipulations, representations, and findings contained in this Interim Order and the relief granted by and the releases contained in this Interim Order (including, without limitation, Paragraphs 2(c) and 5); and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and First Midwest shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Interim Order, no third party is intended to be, or shall be deemed to be, a third-party beneficiary of this Interim Order.

12. Survival. The provisions of this Interim Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting the Cases to cases under chapter 7 of the Code, (c) dismissing the Case, (d) withdrawing of the reference of the Cases from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Cases in this Court. The terms and provisions of this Interim Order, including, without limitation, the rights granted First Midwest under §§ 364(c) and (d) of the Code, shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

13. Notice of Final Hearing. The Final Hearing is scheduled for June 1, 2017 at 11:00 a.m. (Central time) before the Court, and may be continued from time to time without further notice other than that given in open court. The Debtors are directed to promptly serve a copy of this Interim Order and the proposed form of the Final Order by first class mail, postage prepaid, on counsel for First Midwest, the Debtors' other secured creditors, the Debtors' thirty (30) largest unsecured creditors and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objections or responses to the Final Order shall be filed on or before May 25, 2017 at 5:00 p.m. (Central time) and served on the following parties: (i) the Debtors, Attn: Linda Spadafino, 915 Rowell Ave., Joilet, IL 60433; (ii) proposed counsel to the Debtors, Sugar Felsenthal Grais & Hammer, LLP, 30 N. LaSalle St., Suite 3000, Chicago, IL 60602; (iii) the Office of the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), 219 S. Dearborn St., Room 873, Chicago, IL 60604 (iv) counsel to any statutory committee appointed in these Cases; and (v) any party that has requested notice

pursuant to Bankruptcy Rule 2002. Any timely and properly filed and served objection will be heard at the Final Hearing.

Enter:

Honorable Carol A. Doyle
United States Bankruptcy Judge

Dated: 5/10/17

**Prepared by:**

Jonathan P. Friedland, Esq. (IL No. 6257902)
Aaron L. Hammer, Esq. (IL No. 6243069)
Elizabeth B. Vandesteeg, Esq. (IL No. 6291426)
SUGAR FELSENTHAL GRAIS & HAMMER LLP
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400/Facsimile: 312.372.7951

# EXHIBIT A

## DEFINED TERMS

1. *Aggregate Collateral.* Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. *Aggregate Debt.* Collectively, the Prepetition Debt and the Postpetition Debt.

3. *Budget.* The budget attached to this Interim Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to in writing by First Midwest.

4. *Carveout.* Collectively, (a) all fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) the allowed fees and disbursements as may be awarded by the Court to a Carveout Professional from time to time pursuant to § 330 of the Code, in the aggregate amount set forth in Paragraph 4 of this Interim Order.

5. *Carveout Professionals.* Sugar Felsenthal Grais & Hammer LLP and Conway MacKenzie, Inc.

6. *Cases.* The Debtors' chapter 11 cases or any superseding chapter 7 cases of the Debtors.

7. *Cash Collateral.* All "cash collateral," as that term is defined in § 363(a) of the Code, in which First Midwest has an interest, all deposits subject to setoff rights in favor of First Midwest, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

8. *Code.* The United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Interim Order are to the Code.

9. *Committee.* Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to § 1102 of the Code.

10. ***Debtors***. Chellino Crane Inc.; Sam J. Chellino Crane Rental, Inc.; G & B Equipment, LLC; Chellino/Industrial Park Family Limited Partnership; and Chellino Industrial Management, Inc.

11. ***Guaranties.*** Collectively, (a) Commercial Guaranty for Loan No. 2014001300, dated as of July 5, 2016, executed by Sam J. Chellino Crane Rental, Inc.; (b) Commercial Guaranty for Loan No. 2014001300, dated as of July 5, 2016, executed by Frank J. Chellino; (c) Commercial Guaranty for Loan No. 2014001300, dated as of July 5, 2016, executed by Gregory Chellino; (d) Commercial Guaranty for Loan No. 2014001467, dated as of December 29, 2014, executed by Sam J. Chellino Crane Rental, Inc.; (e) Commercial Guaranty for Loan No. 2014001467, dated as of December 29, 2014, executed by Frank J. Chellino; (f) Commercial Guaranty for Loan No. 2014001467, dated as of December 29, 2014, executed by Gregory Chellino; (g) Commercial Guaranty for Loan No. 2014001468, dated as of December 29, 2014, executed by Sam J. Chellino Crane Rental, Inc.; (h) Commercial Guaranty for Loan No. 2014001468, dated as of December 29, 2014, executed by Frank J. Chellino; (i) Commercial Guaranty for Loan No. 2014001468, dated as of December 29, 2014, executed by Gregory Chellino; (j) Commercial Guaranty for Loan No. 2014001469, dated as of December 29, 2014, executed by Sam J. Chellino Crane Rental, Inc.; (k) Commercial Guaranty for Loan No. 2014001469, dated as of December 29, 2014, executed by Frank J. Chellino; (l) Commercial Guaranty for Loan No. 2014001469, dated as of December 29, 2014, executed by Gregory Chellino; (m) Commercial Guaranty for Loan No. 2014001470, dated as of December 30, 2014, executed by Sam J. Chellino Crane Rental, Inc.; (n) Commercial Guaranty for Loan No. 2014001470, dated as of December 30, 2014, executed by Frank J. Chellino; (o) Commercial Guaranty for Loan No. 2014001470, dated as of December 30, 2014, executed by Gregory Chellino; (p) Commercial Guaranty for Loan No. 2014001751, dated as of January 15, 2015, executed by Sam J. Chellino Crane Rental, Inc.; (q) Commercial Guaranty for Loan No. 2014001751, dated as of January 15, 2015, executed by Frank J. Chellino; and (r) Commercial Guaranty for Loan No. 2014001751, dated as of January 15, 2015, executed by Gregory Chellino (each a "Guaranty," collectively the "Guaranties").

12. ***Guarantors***. Collectively, (a) Sam J. Chellino Crane Rental, Inc., (b) Frank J. Chellino, and (c) Gregory Chellino (each a "Guarantor," collectively the "Guarantors").

13. ***Permitted Variance***. An amount equal to 10% of the cumulative amount set forth in the Budget.

14. ***Petition Date***. May 5, 2017.

15. ***Postpetition Collateral***. (a) All of the real and personal property of the Debtors that have granted a mortgage or security interest to First Midwest, or any of its subsidiaries, to secure Prepetition Debt, and their respective estates, of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation all cash, accounts, receivables, inventory, equipment, fixtures, chattel paper, general intangibles all leaseholds, all commercial torts, all interests in any joint venture, all licenses and permits, all other Prepetition Collateral, and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing; provided, however, that the Postpetition Collateral shall not include property to the extent that such property is subject to a valid and enforceable agreement with the Small Business Administration which prohibits the granting of a lien in favor of First Midwest.

(b) A mortgage on the real estate and personal property owned by Chellino/ Industrial Park Family Limited Partnership and now or hereafter located at 915 Rowell Avenue, Joliet, Illinois.

(c) A pledge of notes owed by Chellino Crane, Inc. to the individual Guarantors.

16. ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the Prepetition Documents) existing as of the Petition Date, and all proceeds, rents, issues, profits and products thereof.

17. ***Prepetition Credit Agreement***. That certain Business Loan Agreement (Asset Based) dated as of December 5, 2014 by and between the Chellino Crane, Inc. and Standard Bank and Trust Company ("Standard Bank"), as predecessor in interest to First Midwest, as amended, modified and supplemented from time to time.

18. ***Prepetition Debt***. All indebtedness or obligations of the Debtors under the Prepetition Documents as of the Petition Date, including fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents.

19. ***Prepetition Documents***. The Prepetition Credit Agreement and all security agreements, pledge agreements, promissory notes and other documents, entered into by any of the Debtors and First Midwest, or any of its subsidiaries, including, without limitation, the following documents, among others, each as amended: Commercial Security Agreement, dated as of December 5, 2014, among Chellino Crane, Inc. and Standard Bank; Certain Promissory Notes numbered 2014001751, 2014001300, 2014001467, 2014001468, 2014001469, and 2014001470 (the "Notes"); Separate Business Loan Agreements (the "Business Loan Agreements"); Separate Security Agreements (the "Security Agreements") between the Guarantors and Standard Bank; the Guaranties; and the Prepetition Third Party Documents.

20. ***Prepetition Liens***. First Midwest's security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens and Postpetition Liens.

21. ***Prepetition Third Party Documents***. Collectively, the Debtors' deposit account control agreements, leases, licenses, collateral access agreements, landlord agreements, warehouse agreements bailment agreements, insurance policies, contracts or other similar agreements in which First Midwest has an interest.

22. ***Priority Liens***. Liens that are first priority, properly perfected, valid and enforceable security interests, and that are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

23. ***Replacement Liens***. Priority Liens in the Postpetition Collateral granted to First Midwest pursuant to this Interim Order, subject only to the Postpetition Liens and the Permitted Priority Liens.

**EXHIBIT B**

**BUDGET**

**[attached]**

Chellino Crane, Inc. Working Draft

DIP Cash Flow Analysis Confidential

Monthly Cash Flow

| Month Ending | Pre-Filing May-17 | (5/1 - 5/5) May-17 | Post-Petition May-17 | Jun-17 | Jul-17 | Aug-17 | FY 2017 |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| Rental/Labor Revenue | | $298,169 | $1,533,409 | $2,248,201 | $2,511,810 | $3,296,726 | $9,888,316 |
| Other Revenue | | | | | | | - |
| **Total Cash Receipts** | - | 298,169 | 1,533,409 | 2,248,201 | 2,511,810 | 3,296,726 | 9,888,316 |
| **Operating Disbursements** | | | | | | | |
| Compensation & Benefits | | 298,110 | 1,073,194 | 1,611,401 | 2,231,119 | 2,344,355 | 7,558,180 |
| Rental Related Costs | | 19,576 | 70,475 | 74,799 | 131,584 | 141,797 | 438,230 |
| Operating Expenses | | 26,761 | 81,939 | 100,700 | 100,700 | 100,700 | 410,800 |
| Insurance/Other | - | 95,147 | | 165,000 | 60,000 | 60,000 | 380,147 |
| **Total Operating Disbursements** | - | 439,594 | 1,225,608 | 1,951,900 | 2,523,403 | 2,646,852 | 8,787,357 |
| **Extraordinary Professionals** | | | | | | | |
| Conway MacKenzie - Financial Advisory Fees | 70,325 | 24,690 | - | 116,480 | 108,160 | 220,360 | 540,015 |
| Conway MacKenzie - Financial Advisory Fees (Retainer) | 50,000 | - | - | - | - | - | 50,000 |
| SFGH - Legal Counsel | | | | 150,000 | 120,000 | 100,000 | 370,000 |
| SFGH - Legal Counsel (Retainer) | 150,000 | | | | | | 150,000 |
| Epiq | - | - | 15,000 | 8,000 | 8,000 | 24,000 | 55,000 |
| Trustee/Administrative Fees | - | - | 25,000 | 5,000 | 5,000 | 5,000 | 40,000 |
| Other (FMB Legal) | - | - | - | 24,000 | 16,000 | 40,000 | 80,000 |
| **Total Extraordinary Professional Fees** | 270,325 | 24,690 | 40,000 | 303,480 | 257,160 | 389,360 | 1,285,015 |
| **Notes Payable** | | | | | | | |
| Interest Payments (1) | | - | 207,000 | 207,000 | 207,000 | 207,000 | 828,000 |
| DIP Interest | | - | 32,596 | 34,346 | 36,096 | 39,188 | 142,226 |
| DIP Fees | | | 138,000 | | | | 138,000 |
| Tail Expenses | | | | | | 250,000 | 250,000 |
| Note Payments | | | | | | | - |
| **Total Notes Payable Disbursements** | - | - | 377,596 | 241,346 | 243,096 | 496,188 | 1,358,226 |
| **Operating Leases** | | | | | | | |
| Nations Equipment Finance | | - | 52,283 | - | - | - | 52,283 |
| Mardian | | - | 17,000 | 17,000 | 17,000 | 17,000 | 68,000 |
| Continental | | - | 14,851 | - | - | - | 14,851 |
| Other | | | | | | | - |
| **Total Operating Lease Disbursements** | - | - | 84,134 | 17,000 | 17,000 | 17,000 | 135,134 |
| **Past Due / Critical Payments** | | | | | | | |
| Union Dues | 100,000 | - | 100,000 | - | - | - | 200,000 |
| Payroll Taxes | | - | - | - | - | - | - |
| **Total Past Due/Critical Payments** | 100,000 | - | 100,000 | - | - | - | 200,000 |
| **Beginning Cash Balance** | 167,387 | 167,061 | 947 | 7,018 | 41,493 | 42,644 | 167,387 |
| Plus: Cash Receipts | - | 298,169 | 1,533,409 | 2,248,201 | 2,511,810 | 3,296,726 | 9,888,316 |
| Less: Cash Disbursements | (370,326) | (464,283) | (1,827,338) | (2,513,726) | (3,040,659) | (3,549,400) | (11,765,732) |
| Net Cash Flow | (370,326) | (166,114) | (293,929) | (265,525) | (528,849) | (252,673) | (1,877,416) |
| Other Borrowings | 370,000 | | | | | | 370,000 |
| DIP Borrowings/(Repayment) | | - | 300,000 | 300,000 | 530,000 | 300,000 | 1,430,000 |
| **Ending Cash Balance** | $167,061 | $947 | $7,018 | $41,493 | $42,644 | $89,970 | $89,970 |
| **DIP - Beginning Balance** | - | - | - | 300,000 | 600,000 | 1,130,000 | - |
| Borrowing/Repayment | - | - | 300,000 | 300,000 | 530,000 | 300,000 | 1,430,000 |
| **DIP - Ending Balance** | - | - | 300,000 | 600,000 | 1,130,000 | 1,430,000 | - |
| Total Borrowings (Pre-Petition & DIP) | 370,000 | 370,000 | 670,000 | 970,000 | 1,500,000 | 1,800,000 | |
| Line of Credit | 5,217,903 | | 5,217,903 | 5,217,903 | 5,217,903 | 5,217,903 | |
| **Total Borrowings** | 5,587,903 | 5,587,903 | 5,887,903 | 6,187,903 | 6,717,903 | 7,017,903 | |
| **AR Cumulative - Filing to Exit** | | - | 468,169 | 943,840 | 2,301,610 | 3,078,714 | |
| **AR - Ending Balance** | 3,380,785 | 3,380,785 | 3,848,954 | 4,324,625 | 5,682,395 | 6,459,499 | |
| AR - Inelgible (16%) | 540,926 | 540,926 | 615,833 | 691,940 | 909,183 | 1,033,520 | |
| **AR - Net Available BB** | 2,839,859 | 2,839,859 | 3,233,121 | 3,632,685 | 4,773,212 | 5,425,979 | |
| Borrowing Availability (80%) | 2,271,888 | 2,271,888 | 2,586,497 | 2,906,148 | 3,818,570 | 4,340,783 | |
| Total Borrowing | 5,587,903 | 5,587,903 | 5,887,903 | 6,187,903 | 6,717,903 | 7,017,903 | |
| **Excess (Deficit) Availability** | (3,316,016) | (3,316,016) | (3,301,406) | (3,281,755) | (2,899,333) | (2,677,120) | |
| **AR - Ending Balance** | 3,380,785 | 3,380,785 | 3,848,954 | 4,324,625 | 5,682,395 | 6,459,499 | |
| Total Borrowing | 5,587,903 | 5,587,903 | 5,887,903 | 6,187,903 | 6,717,903 | 7,017,903 | |
| Variance | (2,207,118) | (2,207,118) | (2,038,949) | (1,863,278) | (1,035,508) | (558,404) | |

(1) Interest Payments would be provided as Adequate Protection to existing secured lenders