# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Chellino Crane, Inc., *et al.*[1] | ) | Case No. 17-14200 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Janet S. Baer |

## NOTICE OF MOTION

*Please take notice* that on **August 16, 2018 at 10:30 a.m.,** or as soon thereafter as counsel may be heard, we will appear before the Honorable Janet S. Baer, United States Bankruptcy Judge, or any other judge sitting in her stead, in Courtroom 615 of the United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois present the attached *First & Final Application of FocalPoint Securities, LLC for Compensation & Reimbursement of Expenses for as Debtors' Investment Banker*, at which time and place you may appear as you see fit.

Date: June 22, 2018

*FocalPoint Securities, LLC*

By:   /s/ Jonathan Friedland

Jonathan P. Friedland (IL No. 6257902)
Elizabeth B. Vandesteeg (IL No. 6291426)
Jack O'Connor (IL No. 6302674)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:    312.704.9400
Facsimile:    312.372.7951
jfriedland@SFGH.com
evandesteeg@SFGH.com
joconnor@SFGH.com

*Former Counsel to the Debtors*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CC Equipment, Inc., f/k/a Chellino Crane, Inc. (6804); Sam J. Chellino Crane Rental, Inc. (0830); G & B Equipment, LLC (0688); Chellino/Industrial Park Family Limited Partnership (1246); and Chellino Industrial Management, Inc. (0691).

# Certificate of Service

I hereby certify that on June 22, 2018, a true and correct copy of the ***First & Final Application of FocalPoint Securities, LLC for Compensation & Reimbursement of Expenses for as Debtors' Investment Banker*** was was served on all parties entitled to service via the Court's CM/ECF system, and via electronic mail upon the parties appearing on the service list below.

Date: June 22, 2018                                By:   /s/ Jack O'Connor

**Service List**

*Via E-Mail:*

*Joseph D. Frank*
FrankGecker, LLP
325 North LaSalle St., Ste. 625
Chicago, IL 60654
jfrank@fgllp.com
*Counsel to the Chapter 7 Trustee*

*Foley & Lardner LLP*
Attn: Mark Prager, Esq.
321 North Clark St., Ste. 2800
Chicago, IL 60606
MPrager@foley.com
*Counsel for First Midwest Bank*

*Freeborn & Peters LLP*
Attn: Shelly Derousse, Esq. &
Devon Eggert, Esq.
311 South Wacker Dr., Ste. 3000
Chicago, IL 60606
sderousse@freeborn.com
deggert@freeborn.com
*Co-Counsel for the Creditors' Committee*

*Office of the United States Trustee*
Attn: Roman L. Sukley
219 S. Dearborn St., Room 873
Chicago, IL 60604
roman.l.sukley@usdoj.gov

*Brown Rudnick LLP*
Attn: Bennett S. Silverberg, Esq. &
Gerard T. Cicero, Esq.
Seven Times Square
New York, NY 10036
BSilverberg@brownrudnick.com
*Co-Counsel for the Creditors' Committee*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Chellino Crane, Inc., *et al.*[1] | ) | Case No. 17-14200 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Janet S. Baer |

**COVER SHEET**
**FIRST & FINAL APPLICATION OF FOCALPOINT SECURITIES, LLC FOR COMPENSATION & REIMBURSEMENT OF EXPENSES AS DEBTORS' INVESTMENT BANKER**

| | |
|---|---|
| Name of Applicant: | FocalPoint Securities, LLC |
| Authorized to provide services to: | Debtors |
| Effective Date of Retention: | June 13, 2017 (Dkt. 289) |
| Period for which compensation is sought: | June 13, 2017 through December 19, 2017 |
| Amount of compensation sought: | $556,898.00 |
| Amount of expense reimbursement sought: | $7,333.71 |
| Total request: | $564,231.71 |

This is a **final** application

Date:   June 22, 2018

FOCALPOINT SECURITIES, LLC

By:   /s/ Jonathan Friedland
      One of the Debtors' former attorneys

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CC Equiptment, Inc., f/k/a Chellino Crane, Inc. (6804); Sam J. Chellino Crane Rental, Inc. (0830); G & B Equipment, LLC (0688); Chellino/Industrial Park Family Limited Partnership (1246); and Chellino Industrial Management, Inc. (0691). The address for all of the Debtors is 915 Rowell Avenue, Joliet, Illinois 60433.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Chellino Crane, Inc., *et al.*[1] | ) | Case No. 17-14200 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Janet S. Baer |

**FIRST & FINAL APPLICATION OF FOCALPOINT SECURITIES, LLC FOR COMPENSATION & REIMBURSEMENT OF EXPENSES AS DEBTORS' INVESTMENT BANKER**

FocalPoint Securities, LLC ("***FocalPoint***"), through counsel, submits this first and final application (the "***Application***") for compensation and reimbursement of expenses as investment banker for CC Equipment, Inc., f/k/a Chellino Crane, Inc., *et al*. (the "***Debtors***"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "***Cases***"), under §§ 328(a) title 11 of the United States Code (the "***Bankruptcy Code***") Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Local Rule 5082-1, and according to the Court's *Administrative Order Establishing Procedures for Interim Compensation & Reimbursement of Expenses of Professionals & Committee Members* (Dkt. 204) and the *Order Amending Order Authorizing Debtors to Employ Focal Point Securities, LLC as Investment Banker to the Debtors* (Dkt. 550). In support of the Application, FocalPoint states:

**JURISDICTION & VENUE**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(a) and Local Rule 5028-1. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CC Equipment, Inc., f/k/a Chellino Crane, Inc. (6804); Sam J. Chellino Crane Rental, Inc. (0830); G & B Equipment, LLC (0688); Chellino/Industrial Park Family Limited Partnership (1246); and Chellino Industrial Management, Inc. (0691).

4

The statutory predicates for the relief requested in this Application are §§ 328(a), 503(b), and 507(a)(1) of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, and Local Rule 5028-1.

## BACKGROUND

The Debtors filed voluntary petitions for chapter 11 bankruptcy relief on May 5, 2017 (the "***Petition Date***"). The Debtors continue to manage their financial affairs as debtors-in-possession in these Cases, and a detailed description of the Debtors' business and history is set forth in the Declaration of Jeffrey Zappone (the "***Zappone Declaration***"), filed on the Petition Date, (Dkt. 7) and incorporated here by reference. An official committee of unsecured creditors (the "***Committee***") was appointed in these Cases by the Office of the United States Trustee on May 17, 2017. (Dkt. 113.)

The Debtors submitted an application to retain and employ FocalPoint as their investment banker in these Cases (the "***Employment Application***"), to represent them in carrying out their duties under the Bankruptcy Code, and to specifically perform investment banking services related to the sale of their assets. The Court approved FocalPoint's employment by an order entered July 13, 2017, (the "***Employment Order***") (Dkt. 289). The Employment Order was later modified by an order amending the Employment Order, to reflect the economic realities of the Debtors' sale process (the "***Amended Employment Order***," together with the Employment Order, the "***Employment Orders***"). (Dkt. 550.) Under the Employment Orders, the Court approved terms of FocalPoint's compensation under which FocalPoint would earn an advisory fee of $25,000 per month (to be credited against any Sale Fee earned), and additional fees based on the "Transaction Value," of a successful sale of the Debtors' assets (the "***Sale Fee***"). *See* (Dkts. 289, 550.)

Under the terms of the Amended Employment Order, the Sale Fee is calculated as follows:

5

> . . . a fee (the "Sale Fee") to be paid upon the closing of any Sale equal to $350,000 plus the sum of (a) 7% of the Transaction Value in excess of $17.25 million to $23.5 million, plus (b) 12% of the Transaction Value in excess of $23.5 million. For purposes of the Sale Fee, the Transaction Value shall include the aggregate proceeds generated from the sale of any assets during the Case outside the ordinary course, pursuant to section 363 of the Bankruptcy Code or otherwise. In the event a Transaction includes multiple Sales, a Sale Fee may be earned upon each such Sale, however, the Sale Fee shall not be paid until substantially all the assets of the Company are sold.

(Dkt. 550.)

FocalPoint, assisted by the Debtors' other professionals, conducted a marketing and sale process for the Debtors' assets. As a result of FocalPoint's efforts in these Cases, the Debtors negotiated with their original stalking horse purchaser to present an increased stalking horse bid for all of the Debtors' assets. And when the Debtors' various secured lenders expressed an unwillingness to allow the Debtors to sell their respective collateral at the increased purchase price offered by the initial stalking horse, FocalPoint identified and negotiated with a replacement stalking horse bidder, M-L Holdings Company (the "**Buyer**") to present a new, further increased stalking horse offer for the Debtors' assets. With this new stalking horse offer, the Debtors sought, and the Court approved, procedures under which the Debtors could market their assets and sell them at auction, using the Buyer's stalking horse offer as a baseline (the "***Bidding Procedures Order***"). (Dkt. 457.)

During the marketing and sale process, several of the Debtors' secured lenders elected to "opt-out," of the sale under the terms of the Bidding Procedures Order, leaving less than all of the Debtors' assets available for sale at auction. Regardless, FocalPoint assisted the Debtors in ensuring that the Buyer remained willing to purchase the reduced pool of assets, and worked with prospective purchasers to submit bids for those assets.

At the conclusion of the sale process, the Debtors held an auction (overseen by FocalPoint)

6

for those assets subject to sale on September 25, 2017. At the conclusion of the auction, the Debtors named the Buyer the successful bidder. The Court entered an order approving the results of the auction and the sale to the Buyer on September 29, 2017 (the "***Sale Order***"). (Dkt. 553.) Following the sale of the Debtors' assets closing to the Buyer, the Debtors determined that the "Transaction Value," of the sale was $20,205,686.00. Based on the Transaction Value, FocalPoint earned a Sale Fee of $556,898.00 (described in further detail below).

FocalPoint now submits this Application seeking allowance of fees and reimbursement of expenses on a final basis. Under this first and final Application, FocalPoint seeks an order (a) allowing and approving final compensation of $556,898.00 for professional services rendered by FocalPoint in these Cases; (b) allowing and approving final reimbursement of $7,333.71 as reimbursement for FocalPoint's expenses in these Cases; and (c) authorizing payment to FocalPoint for amounts approved under the Application not already paid by the Debtors, subject in all respects to pending orders of this Court.

### FOCALPOINT'S SERVICES RENDERED & EXPENSES INCURRED

All of the services for which FocalPoint requests compensation were rendered to or for the benefit of the Debtors in connection with these Cases. FocalPoint did not charge the Debtors' estates at hourly rates of compensation for its professional services, instead adopting the Sale Fee model approved under § 328 of the Bankruptcy Code, which does not dictate application of ordinary standard for review of § 327(a) professional fees under § 330 of the Bankruptcy Code, instead looking to an "improvidence" standard in relation to authorizing professional fees. Under the improvidence standard, professional compensation should only be reduced or denied if the "terms and conditions [of the professional's preapproved retention] prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Paloian v. Grupo Serla S.A. de C.V. (In re GGSI*

*Liquidation, Inc.)*, 433 B.R. 19, 45 (N.D. Ill. 2010); *F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.*, 350 B.R. 835, 838-42 (E.D. Wis. 2006). No such developments have occurred in these Cases.

The Debtors conducted the auction process with FocalPoint's support in a traditional investment banking manner, contacting and working with more than ninety potential bidders, with FocalPoint actually performing the bulk of the work to market the Debtors' assets and conduct a robust sale process for the benefit of all parties involved in these Cases that maximized value for the estates and creditors, as more fully described below.

### A. Summary of Services Rendered & Amount of FocalPoint's Fee Request

#### 1) *Summary of Services*

Given the limited scope of FocalPoint's engagement in these Cases as the Debtors' investment banker, all of FocalPoint's time fell within a single category of services: the marketing and sale of the Debtors' assets. Under this umbrella, however, FocalPoint performed numerous essential tasks on the Debtors' behalves, including:

(a) Overseeing the marketing and sale process for the Debtors' assets;

(b) Negotiating with the Debtors' original stalking horse bidder to increase its proposed stalking horse offer;

(c) Identifying more than 90 potential purchasers for the Debtors' assets, including strategic and financial buyers, as well as liquidators;

(d) Preparing a teaser for the Debtors' assets for distribution to potential asset purchasers, as well as a Confidential Information Memorandum containing details of the Debtors' business operations and assets to market the Debtors' assets for sale;

(e) Identifying and negotiating the terms of the Buyer's replacement stalking horse bid;

(f) Communicating and negotiating with numerous secured lenders to ensure a critical mass of assets were available for sale at the auction, including preparing

multiple presentations for the secured lenders and holding several meetings with representatives of the Debtors' equipment lenders to solicit support for a sale process;

(g) Negotiating with interested bidders regarding terms of potential bids and working to provide these parties information necessary to conduct due diligence.

(h) Providing testimony through FocalPoint professional Michael Fixler in support of multiple matters, including testimony relating to stay relief motions, and the Debtors' proposed sale process at a hearing to approve the Debtors' proposed bidding and sale procedures, ultimately approved by the Court under the Bidding Procedures Order.

(i) Reviewing and assessing incoming bids for the Debtors' assets, working with the Debtors and their other professionals to evaluate incoming bids before and at the auction;

(j) Overseeing the auction proceedings, including negotiations with the Buyer and a credit bidding lender to ensure the auction brought the highest and best price for the Debtors' assets; and

(k) Actively participating throughout its engagement in negotiations among the Debtors, their secured lenders, the Committee, and other interested parties to ensure the Debtors maximized value for creditors in these Cases.

Ultimately, FocalPoint's services as investment banker to the Debtors yielded significant value for the estates.

*2) Amount of Fees Sought*

Under the Employment Orders, FocalPoint earned fees totaling $556,898.00, representing FocalPoint's Sale Fee.[2] As described above, the Sale Fee is calculated based on the Transaction Value of the Debtors' asset sale. The Transaction Value of the sale was determined to be

---

[2] Under the Employment Orders and the terms of FocalPoint's engagement agreement with the Debtors, FocalPoint earned monthly advisory fees in these Cases paid to FocalPoint during the course of the Cases, and are credited against FocalPoint's Sale Fee. FocalPoint was also paid funds directly from numerous of the Debtors' secured lenders at the closing of the Sale. In total, FocalPoint was paid $322,413 on account of the Sale Fee and $2,912.68 in expenses. As such, $234,485 of the Sale Fee and $4,421.03 in expenses remaing outstanding and unpaid to FocalPoint.

9

$20,205,686.00, calculated based on the value of the Debtors' (1) equipment; (2) real estate; and (3) accounts receivable as follows:

| Asset Category | | Value |
|---|---|---|
| Equipment | -- | $ 16,852,749.00 |
| Real Estate | -- | $ 900,000.00 |
| Accounts Receivable | -- | $ 2,452,937.00 |
| **Total Transaction Value** | -- | **$ 20,205,686.00** |
| | | |
| Transaction Value over $17.25 million threshold ("Increment") | -- | $ 2,955,686.00 |
| Transaction Value over $23.5 million threshold | -- | $ 0.00 |

Using the Transaction Value, FocalPoint's Sale Fee is calculated as follows:

| Sale Fee<br>(Based on $20,205,686 Transaction Value) | | Amount |
|---|---|---|
| Base Success Fee | -- | $ 350,000.00 |
| 7% of Increment ($2,955,686.00 * 7%) | -- | $ 206,898.00 |
| **Total Sale Fee** | -- | **$ 556,898.00** |

**B. Expense Reimbursement**

In an effort to provide the Court and parties in interest with information concerning the nature and amount of reimbursable expenses incurred during these Cases, FocalPoint has included an itemized schedule of its expenses incurred during the Application period, set forth in **Exhibit A** attached to this Application.

FocalPoint incurred expenses in the amount of $7,333.71 in connection with charges associated with its duties as the Debtors' investment baker, principally including travel-related expenses and working meals. All expenses incurred by FocalPoint in connection with its representation of the Debtors were ordinary and necessary expenses.

FocalPoint does not bill its clients or seek compensation in this Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, electronic research, and facsimile transmissions. Such expenses are factored into FocalPoint's operating costs.

### C. Benefit to the Estate

FocalPoint's services as investment banker to the Debtors in these Cases resulted in a significant benefit to the Debtors' estates and creditors, and FocalPoint's requested compensation should be approved on a final basis. FocalPoint provided valuable assistance and guidance to the Debtors throughout their sale process. And in coordination with the Debtors' other professionals, FocalPoint ran a robust sale process yielding the best possible purchase price for the Debtors' assets.

### D. FocalPoint has Provided Adequate Notice and Opportunity to Object to this Fee Application

In compliance with Bankruptcy Rule 2002(a)(6), FocalPoint is providing 21 days' notice of this Fee Application to (a) counsel for the Chapter 7 Trustee; (b) counsel for the Committee; (c) counsel for First Midwest Bank; (d) the Office of the United States Trustee; and (e) parties who have filed a notice of appearance with the Clerk of the Court and requested notice of filings in these Cases.

FocalPoint requests that notice to the parties identified above be deemed sufficient in these Cases, and that FocalPoint not be required to serve copies of this Fee Application on all creditors. FocalPoint submits that notifying the above parties provides more than adequate notice to parties in interest in these Cases of the Fee Application, and that the parties served represent the most significant stakeholders remaining in these Cases. Furthermore, the task of serving all creditors with notice and copies of this Fee Application would be unnecessarily voluminous and costly. FocalPoint therefore requests that the Court approve notice of this Fee Application sufficient under the circumstances.

*Wherefore*, FocalPoint requests that this Court enter an order substantially in the form

attached to this Application that:

(a) Allows and approves final compensation to FocalPoint in the total amount of $556,898.00, for professional services rendered by FocalPoint, and allows authorizes the total amount of $7,333.71 for actual and necessary expenses incurred by FocalPoint during these Cases;

(b) Authorizes payment to FocalPoint for all amounts approved under this Application, including those not already paid by the Debtors, subject in all respects to pending orders of this Court; and

(c) Provides FocalPoint any additional relief the Court deems appropriate under the circumstances.

Date: June 22, 2018

*FocalPoint Securities, LLC*

By: /s/ Jonathan Friedland
    One of the Debtors' Former Attorneys

Jonathan P. Friedland (IL No. 6257902)
Elizabeth B. Vandesteeg (IL No. 6291426)
Jack O'Connor (IL No. 6302674)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile: 312.372.7951
jfriedland@SFGH.com
evandesteeg@SFGH.com
joconnor@SFGH.com

*Former counsel to the Debtors*